1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X
                        CR-95-31
UNITED STATES OF AMERICA    :    (FB)

      -against-          United States Courthouse
                 :    Brooklyn, New York
GEORGE ZAPPOLA,
and GEORGE CONTE,     :    May 15, 1996
                   5:15 p.m.
       Defendant.    :
- - - - - - - - - - - - - - X

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE FREDERIC BLOCK
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:        ZACHARY W. CARTER
                       United States Attorney
                       BY:  JAIME ORENSTEIN
                            STEPHEN KELLY
                       Assistant United States Attorneys
                       225 Cadman Plaza East
                       Brooklyn, New York 11201

For Defendant Zappola:   JAMES LA ROSSA, ESQ.
                       ANDREW WEINSTEIN, ESQ.

For Defendant Conte:     KEITH WATANABE, ESQ.
                       RAFAEL ABROMOWITZ, ESQ.

Court Reporter:         Diana Pereira
                       **Certified Realtime Reporter**
                       225 Cadman Plaza East - Room 377
                       Brooklyn, New York
                       (718) 330-1781

Proceedings recorded by mechanical stenography, transcript
produced by CAT.

2

1        THE CLERK:  United States of America versus George

2   Zappola and George Conte, criminal cause for pleading.

3        Can counsel state their appearances for the record.

4        MR. ORENSTEIN:  Jaime Orenstein and Stephen Kelly

5   for the government.

6        THE COURT:  Good afternoon, Mr. Orenstein and

7   Mr. Kelly.

8        MR. WATANABE:  For Defendant George Conte, William

9   Keith Watanabe and Rafael Abromowitz.

10       THE COURT:  Good afternoon.

11       MR. LA ROSSA: For the Defendant Zappola, your Honor,

12   James LaRossa and Andrew Weinstein.

13       THE COURT:  All right.

14       Mr. Abromowitz is going to be handling this for your

15   client?

16       MR. WATANABE:  I will be handling the matter, your

17   Honor.

18       THE COURT:  Let me just make a note since this is the

19   first time that I am focusing on you.

20       Give me your name again.

21       MR. WATANABE:  Watanabe, W A T A N A B E.

22       THE COURT:  Let's just focus for a moment on how best

23   we can process all of this.  Obviously, we're going to be here

24   for some period of time since we're talking about the

25   allocution to many, many counts in the indictment.  My

3

1  suggestion is that we try to combine whatever we can put

2  together collectively, so to speak.  In that respect, in terms

3  of advising the defendants of their rights and the rights

4  they'll be waiving if they go forward and plead guilty, et

5  cetera, if it's agreeable to counsel, I would like to do that

6  collectively.

7          MR. LA ROSSA: It's agreeable.

8          MR. ORENSTEIN:   Yes, your Honor.

9          THE COURT:  In terms of the allocution aspects, we're

10  going to have to do that, obviously, individually.  I know of

11  no other way of doing that.  Let's see how it goes along.

12          Do you have any other suggestions, any of you folks,

13  in terms of how we can properly, effectively process all of

14  this?

15          Mr. Orenstein?

16          MR. ORENSTEIN:  No, Judge.  It may prove easier when

17  we get down to it, for some counts that both defendants are

18  going to enter pleas to, we could cover that count with one

19  defendant and then with the next before moving on to the next

20  count.

21          THE COURT:  I take it that there's been a

22  considerable effort in terms of the allocution that will be

23  forthcoming, that these matters have been discussed very

24  carefully, that the defendants realize that they are going to

25  have to appropriately and clearly allocute.

D.Pereira, OCR

4

1          Mr. LaRossa, is there any problem in that respect?

2          MR. LA ROSSA: I think they're going to allocute

3    properly and completely.

4          THE COURT:   Mr. Watanabe?

5          MR. WATANABE:    I anticipate no problems, Judge.

6          THE COURT:   Let's do this.   Let's start by first

7    acknowledging that I do have two plea agreements.   One

8    purportedly executed by the Defendant Zappola, which I marked

9    Exhibit 1, and the other purportedly executed by the Defendant

10   Conte, which I have marked Court Exhibit 2.

11         (So marked)

12         THE COURT:   I will address appropriate questions to

13   each of these defendants in the course of the proceedings.

14         At this time, let's have both defendants sworn.

15         (Defendant George Zappola duly sworn)

16         (Defendant George Conte duly sworn)

17         THE COURT:   I also understand now that we do have an

18   information, and maybe we ought to at this time first waive

19   indictment.

20         I have the information, which charges Mr. Conte with

21   six counts.   I am looking for the information in respect to

22   Mr. Zappola, which I do not seem to have.

23         I do have that now.

24         That charges Mr. Zappola with six counts as well.

25         I have now the waiver of indictment signed by Mr.

D.Pereira, OCR

5

1    Conte, waiver of indictment signed by Mr. Zappola.

2            Mr. Conte, this is your signature, I take it?

3            DEFENDANT CONTE:  Yes, it is.

4            THE COURT:  Mr. Zappola, this is your signature?

5            DEFENDANT ZAPPOLA:  Yes.

6            THE COURT:  Mr. LaRossa, you witnessed Mr. Zappola's

7    signature?

8            MR. LA ROSSA: I did, sir.

9            THE COURT:  Counsel from the defendant here.  I can't

10   make out that signature?

11           MR. WATANABE:   I did, Judge.

12           THE COURT:  You witnessed that as well?

13           MR. WATANABE:   I did.

14           THE COURT: I tell each of you, by signing this waiver

15   of indictment you have agreed to proceed in respect to those

16   six counts by information and not by indictment.  You have

17   waived your rights to have a grand jury consider all of this

18   and prefer charges against you if deemed appropriate to do

19   so.

20           The waiver of indictment specifically states that you

21   are each being accused of three counts of murder in aid of

22   racketeering in violation of 18, U.S.C., Section 1959(a)(1)

23   and three counts of conspiracy to commit murder in aid of

24   racketeering in violation of Title 18, U.S.C.,

25   Section 1959(a)(5).

6

1          This specifically states that based upon the proposed

2     information, the nature of the charges, and your rights, you

3     hereby waive in open court on this day prosecution by

4     indictment and consent that the proceeding may be by

5     information rather than by indictment.

6          Do you each understand that?

7          Mr. Conte?

8          DEFENDANT CONTE:  Yes.

9          THE COURT:  Do you understand that as well,

10    Mr. Zappola?

11         DEFENDANT ZAPPOLA:  Yes.

12         THE COURT:  I will sign these at this time.

13         MR. ORENSTEIN:  One slight correction.

14         Mr. Zappola's waiver of indictment form specifies two

15    counts of murder and four counts of conspiracy.

16         THE COURT:  You are correct.

17         Let the record reflect that Mr. Zappola is being

18    charged with two counts of murder in aid of racketeering in

19    violation of 18, U.S.C., Section 1959(a)(1) and four counts of

20    conspiracy to commit murder in aid of racketeering in

21    violation of 18, U.S.C., Section 1959(a)(5).

22         Thank you for correcting me in that respect,

23    Mr. Orenstein.

24         All right, I have signed both agreements.

25         Having been sworn, Mr. Zappola and Mr. Conte, you can

7

1   stay seated, if it's more comfortable for you, while I go

2   through everything.

3          I want you each to understand, first of all, that if

4   you do not answer questions that I am going to pose to you

5   honestly, if you do not allocute honestly, if you say anything

6   that's not correct, that you can be prosecuted for perjury or

7   for making a false statement.

8          Do you understand that?

9          DEFENDANT CONTE:   Yes.

10         DEFENDANT ZAPPOLA: Yes.

11         THE COURT:  Let me ask first, Mr. Zappola, to state

12   your full name.

13         DEFENDANT ZAPPOLA:  George Zappola.

14         THE COURT:  And, Mr. Conte, state for the record your

15   full name.

16         DEFENDANT CONTE:   George Conte.

17         THE COURT:  Mr. Zappola, tell me, how old are you?

18         DEFENDANT ZAPPOLA:  I will be 37 tomorrow.

19         THE COURT:  Mr. Conte, how old are you?

20         DEFENDANT CONTE:   I'm 35 years old.

21         THE COURT:  Mr. Zappola, what education or schooling

22   have you had so far?

23         DEFENDANT ZAPPOLA:  Graduated high school.

24         THE COURT:  Where was that?

25         DEFENDANT ZAPPOLA:  Staten Island, New York.  New

8

1    York High School.

2           THE COURT:  Mr. Conte, how about you?

3           DEFENDANT ZAPPOLA:  I went to Lafayette High School,

4    and I stopped at the 10th grade.

5           THE COURT:  The 10th grade?

6           DEFENDANT CONTE:  Yes.

7           THE COURT:  It is obvious both of you are able to

8    speak English and understand English.

9           Is there any problem I should be made aware of in

10   that respect, Mr. Zappola, or, Mr. Conte?

11          DEFENDANT CONTE:  No.

12          THE COURT:  Mr. Zappola, have you had any difficulty

13   in communicating with your attorney, Mr. LaRossa?

14          DEFENDANT ZAPPOLA:  No.

15          THE COURT:  Mr. Conte, have you had any problem

16   communicating with your attorney, Mr. Watanabe?

17          DEFENDANT CONTE:  Not at all.

18          THE COURT:  Are you presently or have you been under

19   the care of a physician or psychiatrist, either of you?

20          DEFENDANT CONTE:  No.

21          DEFENDANT ZAPPOLA:  No.

22          THE COURT:  In the past 24 hours, have either of you

23   taken any narcotic drugs, medicine or pills or drunk any

24   alcoholic beverages?

25          DEFENDANT CONTE:  No.

9

1          DEFENDANT ZAPPOLA:  No.

2          THE COURT:  All right.

3          Is your mind clear?

4          Do you have any problems in understanding what is

5    happening here in court today?

6          Mr. Zappola?

7          DEFENDANT ZAPPOLA:  Yeah, my mind is clear.

8          THE COURT:  Clear mind.

9          You understand everything that's going on?

10          DEFENDANT CONTE:  Yes.

11          THE COURT:  A lot of these questions may seem kind of

12    supercilious or not really terrible relevant, but it is

13    terribly important that we comply with what the law requires

14    that we do as judges when we take a plea.  Part of this is set

15    forth in statutes and we have to be meticulous going through

16    it even though it may seem somewhat not relevant to you.

17          Mr. LaRossa, have you discussed this matter fully

18    with your client?  Are you satisfied he understands the rights

19    he will be waiving if he goes forward with his contemplated

20    pleas of guilty?  And is he capable of understanding the

21    nature of all these proceedings?

22          MR. LA ROSSA: He is.

23          THE COURT:  Have you discussed this matter with your

24    client fully?

25          MR. WATANABE:  I have.

10

1      THE COURT:  Does he understand the rights he will be

2  waiving by pleading guilty and does he understand the nature

3  of these proceedings?

4      MR. WATANABE:   He does, your Honor.

5      THE COURT:  Do you have any doubts, Mr. LaRossa, as

6  to Mr. Zappola's competence to plead guilty at this time?

7      MR. LA ROSSA: No, your Honor.

8      THE COURT:  Do you have any doubts, Mr. Watanabe, in

9  respect to your client's competence to plead at this time?

10     MR. WATANABE:   No, Judge.

11     THE COURT:  Have each of you advised your respective

12 clients of the maximum sentence and fine that can be imposed,

13 and have each of you discussed with your respective clients

14 the operation of the sentencing guidelines and specifically

15 how they pertain and apply to their circumstances?

16     MR. LA ROSSA: Yes, your Honor.

17     MR. WATANABE:   Yes, your Honor.

18     THE COURT:  Mr. Zappola, have you had a full

19 opportunity to discuss your case with Mr. LaRossa?  Are you

20 satisfied with the way he has represented to you to date?  Are

21 you satisfied with having him continue to represent you?

22     DEFENDANT ZAPPOLA:  Yes.

23     THE COURT:  I ask you the same question, Mr. Conte.

24 Have you had a full opportunity to discuss your case with your

25 attorneys, Mr. Abromowitz and Mr. Watanabe?  Are you satisfied

11

1   with their representation?

2           DEFENDANT CONTE:  Yes.

3           THE COURT:  And are you satisfied with having them

4   continue to represent you?

5           DEFENDANT CONTE:  Yes.

6           THE COURT:  The answer is yes to that?

7           DEFENDANT CONTE:  Yes.

8           THE COURT:  Have each of you received a copy of the

9   indictment and a copy of the information which has now been

10  filed, and have each of you consulted with your attorney about

11  every charge that is set forth in the underlying indictment

12  and in the information?

13          Mr. Zappola, yes or no?

14          DEFENDANT ZAPPOLA:  Yes.

15          THE COURT:  Mr. Conte, yes or no?

16          DEFENDANT CONTE:  Yes.

17          THE COURT:  Do each of you understand all the charges

18  that have been leveled and brought against you in the

19  indictment and now in the information?

20          DEFENDANT ZAPPOLA:  Yes.

21          DEFENDANT CONTE:  Yes.

22          THE COURT:  Is there anything about any of these

23  charges that you have any concerns about or are confused about

24  or do not understand?

25          Mr. Zappola?

D.Pereira, OCR

12

1          DEFENDANT ZAPPOLA:  Yes.

2          THE COURT:  You understand everything?

3          DEFENDANT ZAPPOLA:  Yes.

4          THE COURT:  Is there anything that you do not

5  understand?

6          DEFENDANT ZAPPOLA:  No.

7          THE COURT:  Mr. Conte?

8          DEFENDANT CONTE:  I understand everything.

9          THE COURT:  Now, bear with me as I go through the

10 rights that you have and the rights you will be waiving if you

11 decide to plead guilty to these charges.

12          I say this to you collectively, so each of you pay

13 close attention.

14          The first and most important thing you must

15 understand is that neither of you have to plead guilty even if

16 you are guilty.  Under our system of law, the prosecutor has

17 the burden of proving the guilt of defendants such as

18 yourselves beyond a reasonable doubt, and if the prosecutor is

19 unable to meet that burden of proof, then the jury has the

20 duty to find the defendant not guilty, even if he is guilty.

21          Furthermore, should a defendant waive their right to

22 be tried by a jury, then the Judge would have that same

23 obligation, to find the defendant not guilty, even if they are

24 guilty, if the government is unable to meet their burden of

25 proof.

13

1        Do you understand that, gentlemen?

2        DEFENDANT ZAPPOLA:  Yeah.

3        THE COURT:  Each of you?

4        DEFENDANT CONTE:  Yes.

5        THE COURT:  All right.

6        What happens sometimes, in American courtrooms, a

7    jury has returned a verdict of not guilty even though

8    everybody in the courtroom was of the opinion that the

9    defendant was guilty.  But what the jury was saying in those

10   cases is not that the defendant was innocent but rather that

11   the prosecutor or the government had failed to meets its

12   burden of proving that the defendant was guilty.

13       That is why I say to you that even if you gentlemen

14   are guilty, you still have a choice.  You may plead guilty, as

15   you apparently wish to do today, or you may say to the

16   government, in words or substance, prove it, meet your burden

17   of proof of my guilt beyond a reasonable doubt.

18       The way you would make that decision is by saying not

19   guilty to all these charges when I ask you ultimately how you

20   will plead.

21       Do you each understand that?

22       Mr. Zappola?

23       DEFENDANT ZAPPOLA:  Yes.

24       THE COURT:  Mr. Conte?

25       DEFENDANT CONTE:  Yes.

D.Pereira, OCR

14

1          THE COURT:  Now, if you decide to persist in your

2   present status, which is not guilty to all of these charges,

3   then under the constitution and laws of the United States you

4   are entitled to a speedy and public trial by jury with the

5   assistance of counsel on all the charges against you in the

6   indictment, and now in the information.  Of course you haven't

7   pled to the information yet; there's no need to do that yet.

8   I will ask you ultimately, of course, how you will plead to

9   the information.

10          At such a trial you would be presumed innocent and

11   the government would have to overcome their presumption and

12   prove you guilty by competent evidence and beyond a reasonable

13   doubt.  You would not have to prove that you are innocent.  If

14   the government were to fail, the jury would have the duty to

15   find you not guilty, or, once again, if you waived your right,

16   your absolute right to be tried by a jury and chose to be

17   tried by a judge, then the judge would have that obligation.

18          By pleading guilty, you will be relieving the

19   government of the burden of proving that you are indeed guilty

20   and you will be admitting or confessing to your guilt.

21          Do you understand that?

22          Mr. Zappola?

23          Mr. Conte?

24          DEFENDANT ZAPPOLA:  Yes.

25          DEFENDANT CONTE:  Yes.

1          THE COURT:  Now, should you decide to persist in not

2     pleading guilty, in the course of the trial, the witnesses for

3     the government would have to come to court and testify in your

4     presence and your counsel would have the right to

5     cross-examine the witnesses for the government, to object to

6     evidence offered by the government and to offer evidence in

7     your behalf.

8          At a trial, while you would have the right to testify

9     if you chose to do so, you could not be required to do that.

10    Under the constitution of the United States, a defendant in a

11    criminal trial cannot be forced to take the witness stand at

12    his trial and say anything that could be used to show that he

13    is guilty of the crime with which he is charged.  We call

14    that, as you probably realize, a right against

15    self-incrimination.  If you decide not to testify the Court

16    would instruct the jury that they could not hold that against

17    you.

18          Do all of you understand that?

19          DEFENDANT ZAPPOLA:  Yes.

20          DEFENDANT CONTE:  Yes.

21          THE COURT:  Now, if you plead guilty, as you

22    apparently contemplate doing, then I will have to ask you

23    questions about what you did in order to satisfy myself that

24    you are indeed guilty of the charges to which you seek to

25    plead guilty, and you will have to answer my questions and

16

1  acknowledge your guilt.

2       Thus, you will be giving up the right that I have

3  just described, that is, the right not to say anything that

4  would show that you are guilty of the crime with which you are

5  charged.

6       Do you each understand that?

7       Mr. Zappola?

8       DEFENDANT ZAPPOLA:  Yes.

9       THE COURT: Mr. Conte?

10      DEFENDANT CONTE:  Yes.

11      THE COURT:  If you plead guilty, as you plan to do,

12 and I accept your plea, you will, therefore, be giving up your

13 constitutional right to a trial and all the other rights that

14 I just discussed.  There will be no further trial of any kind,

15 no right to an appeal.  I will simply enter a judgment of

16 guilty upon the basis of your guilty plea.

17      There are some qualifications in respect to whether

18 you will be able to withdraw your guilty plea that are

19 contained, as you probably realize, in the plea agreements,

20 and I will get to that when we go through the plea agreements.

21      But other than those qualifications, I just want you

22 to understand clearly that there will simply be a judgment of

23 guilty on the basis of your guilty plea that will be entered.

24      Do you understand that?

25      DEFENDANT ZAPPOLA:  Yes.

17

1          DEFENDANT CONTE:  Yes.

2          THE COURT:  Aside from what's in the plea agreement,

3    if I sentence you incorrectly under the law, you would have

4    the right to appeal to the appellate court, which is the

5    Second Circuit Court of Appeals, but you will not be able to

6    withdraw your guilty plea.  Your only remedy would be the

7    right to appeal if I do anything improper.  The only

8    qualification on the fact that you cannot withdraw your guilty

9    plea is that which is contained in the plea agreement, which I

10   will be getting to momentarily.

11          Do you all understand that?

12          Mr. Zappola?

13          DEFENDANT ZAPPOLA:    Yes.

14          THE COURT:  Mr. Conte?

15          DEFENDANT CONTE:    Yes.

16          MR. ORENSTEIN:  One limitation on what you just said

17   that is in the plea agreements is that the defendants have

18   each agreed in their agreements not to file an appeal in the

19   event that the Court imposes a sentence within the range

20   specified in the agreement.

21          THE COURT:  That's not really a qualification.  I am

22   just talking about if I sentenced him unlawfully.

23          MR. ORENSTEIN:  Yes.

24          THE COURT:  If I obviously sentenced him, you know,

25   unlawfully within the range, then they are not going to be

D.Pereira, OCR

18

1  appealing.

2          Do you understand that?

3          MR. ORENSTEIN:  Yes.

4          THE COURT:  But you cannot, Mr. Orenstein, preclude

5  somebody, from my understanding of the law, from taking an

6  appeal if I absolutely, flat out, incorrectly sentence them

7  contrary to law.

8          MR. ORENSTEIN:  That's correct, Judge.

9          I am just making sure it is clear that there are

10 certain claims that are being waived with respect to right to

11 appeal a sentence that's spelled out in the agreement.

12         THE COURT:  Do you understand that?

13         DEFENDANT ZAPPOLA:  Yes.

14         THE COURT:  Now, having heard all of that,

15 Mr. Zappola, are you willing to give up your right to a trial

16 and the other rights I have just discussed?

17         DEFENDANT ZAPPOLA:  Yes.

18         THE COURT:  Mr. Conte, are you also willing to give

19 up your right to trial and the other rights that I have just

20 discussed?

21         DEFENDANT CONTE:  Yes, your Honor.

22         THE COURT:  Let's look at the plea agreements now.

23         In respect to you, Mr. Zappola, I turn now to Page 9,

24 the last page of the agreement.

25         I ask you whether, in fact, this is your signature

19

1  and whether, in fact, you signed this today?

2        DEFENDANT ZAPPOLA:  Yes.

3        THE COURT:  I ask you the same with respect to your

4  plea agreement, Mr. Conte:  Is this your signature?  Did you

5  sign this today?

6        DEFENDANT CONTE:  Yes.

7        THE COURT:  Did each of you gentlemen read this?

8        Was it explained to you, in addition to your reading

9  it, by your respective counsel?

10        DEFENDANT ZAPPOLA:  Yes, it was explained.

11        DEFENDANT ZAPPOLA:   Yes, sir.

12        THE COURT:  Do any of you gentlemen have any question

13  about anything at all that's contained in this plea agreement

14  that you are not clear about and would like to question me

15  about, would like further explanation or anything else?

16        Mr. Zappola?

17        DEFENDANT ZAPPOLA:  No.

18        THE COURT:  Mr. Conte?

19        DEFENDANT CONTE:  No, sir.

20        THE COURT:  Now, having those acknowledgments is

21  helpful but nonetheless I do want to specifically advise you

22  in open court on the record, Mr. Zappola, and, Mr. Conte, in

23  this plea agreement you are each pleading guilty to Counts One

24  and Two of the indictment, which carries a maximum term of

25  imprisonment of life, a minimum term of imprisonment -- no

D.Pereira, OCR

20

1   minimum term, and the statute to which you are contemplating

2   pleading guilty in respect to Counts One and Two of the

3   indictment provides for a maximum supervised release term of

4   five years to follow any term of imprisonment, and further

5   provides that if a condition of release is violated, that the

6   defendant may be sentenced up to five years without credit for

7   prerelease imprisonment or time previously served on

8   post-release supervision.  The statute specifically which you

9   are pleading guilty to 18, U.S.C., Section 1959(a)(5) in

10  respect to --

11          MR. ORENSTEIN:  I'm sorry, Judge.

12          THE COURT:  That's not true.  1962(c).

13          MR. ORENSTEIN:  Count One is 1962(c).

14          THE COURT:  Count One is 18, U.S.C., Section 1962(c)

15  and Count Two is 18, U.S.C., Section 1962(d).  1963(a) is

16  implicated also, apparently.

17          MR. ORENSTEIN:  That's the sentencing provision for

18  the RICO Act.

19          THE COURT:  That's the sentencing provision.

20          Under those statutes I have just described to you,

21  the minimum term of imprisonment, the maximum term of

22  imprisonment, the maximum supervised release term, I also

23  advise you that the statutes provide for a maximum fine of

24  $250,000 or twice the gross proceeds from the offense.  There

25  is the possibility of restitution, $50 special assessment,

21

1  which I suspect is the least of your problems, and provides

2  for other penalties, and any forfeiture of any interest

3  acquired or maintained in violation of 18, U.S.C., Section

4  1962.

5         Now --

6         MR. ORENSTEIN:  If I may interrupt with one matter.

7         With respect to supervised release, I believe you did

8  not warn the defendants about the possibility of revocation

9  and the possibility of five-year imprisonment if the release

10 term is revoked.

11        THE COURT:  Somewhat academic.  The minimum and

12 maximum sentence is life -- or the maximum sentence is life;

13 you are quite right.

14        The statute provides further in terms of supervised

15 release, as I said before, five years to follow any term of

16 imprisonment and also that if a condition of release is

17 violated, that the defendant may be sentenced up to five years

18 without credit for prerelease imprisonment or time previously

19 served on postrelease supervision.

20        Now, Mr. Zappola, you also are, in your plea

21 agreement, contemplating pleading guilty to each of Counts

22 Four, Thirteen, and Fifteen of the indictment and Counts One

23 through Five of the information.

24        MR. ORENSTEIN:  I'm sorry, Judge.  It is One and

25 Two.

22

1       THE COURT:  One and Two of the information.

2       And that's in respect to 18, U.S.C., Section

3  1959(a)(1), and the statute provides for a maximum term of

4  imprisonment of life, a minimum term of imprisonment of zero,

5  and a maximum supervised release term of five years to follow

6  any term of imprisonment, and if a condition of release is

7  violated, the defendant may be sentenced up to five years

8  without credit for prerelease imprisonment or time previously

9  served on postrelease supervision.  The statute further

10  provides for a maximum fine of $250,000, the possibility of

11  restitution and a $50 special assessment.

12       MR. LA ROSSA: We think you are working off an old

13  draft, Judge.  Do you have the one that's been signed?

14       THE COURT:  Is there anything that I said that's not

15  in the original?

16       MR. ORENSTEIN:  No.  It was only the numbers that

17  alerted us to the possibility.

18       THE COURT:  I am trying to deal collectively with

19  those that are in common.  I have highlighted the original

20  draft that way but I have not highlighted the final version

21  which was given to me, so there may be some glitches in that

22  respect.  So just bear with me.

23       Now, Mr. Conte, you are, also, in your plea agreement

24  pleading guilty to each of Counts Six, Seven, Eight, Fourteen,

25  and Sixteen of the indictment and Counts Four through Six of

23

1   the information.   That's in violation of 18, U.S.C., Section

2   1959(a)(5), which statute provides for a minimum term of

3   imprisonment of zero and a maximum term of imprisonment of ten

4   years.

5          The statute also provides the penalties associated

6   with the violation of the statute also provides for a maximum

7   supervised release term of three years to follow any term of

8   imprisonment, and if a condition of release is violated, then

9   the defendant may be sentenced up to two years without credit

10  for prerelease imprisonment or time previously served on

11  postrelease supervision.   The statute also provides for a

12  maximum fine of $250,000, possible restitution and $50 special

13  assessment.

14         Each of you gentlemen are also in your respective

15  plea agreements pleading guilty to Count Nineteen of the

16  indictment.   I advise each of you collectively now that the

17  count refers to 18, U.S.C., Section 3, which provides for a

18  minimum term of imprisonment of zero, maximum term of

19  imprisonment of 15 years.   Also, maximum supervised release

20  term of three years to follow any term of imprisonment.

21         If a condition of release is violated, the defendant

22  may be sentenced up to two years without credit for prerelease

23  imprisonment or time previously served in postrelease

24  supervision.   The statute also provides for a maximum

25  $250,000, possible restitution and a $50 special assessment.

24

1          I further point out to you gentlemen, each of you in

2     your respective plea agreements are pleading guilty to

3     Count Twenty of the indictment.

4          The specific statute which you are pleading guilty to

5     is 18, U.S.C., Section 1071, and penalties for violating that

6     statute are a minimum term of imprisonment of zero, a maximum

7     term of imprisonment of five years and a maximum supervised

8     release term of three years to follow any term of

9     imprisonment.  If a condition of release is violated, the

10    defendant may be sentenced up to two years without credit for

11    prerelease imprisonment or time previously served on

12    postrelease supervision.  The statute also provides for a

13    maximum fine of $250,000, possible restitution and a $50

14    special assessment.

15         Each of you gentlemen are also pleading guilty to

16    Count Twenty-one of the indictment.  That charges you with

17    violating 18, U.S.C., Section 371.  The penalties for

18    violating that statutory provision is a minimum term of

19    imprisonment of zero to a maximum term of imprisonment of five

20    years, a maximum supervised release term of three years to

21    follow any term of  imprisonment.  If a condition of release

22    is violated, the defendant may be sentenced up to two years

23    without credit for prerelease imprisonment and time previously

24    served on postrelease supervision.  The statutory provisions

25    further provide for a maximum fine of $250,000, possible

D.Pereira, OCR

25

1    restitution and $50 special assessment.

2          Did I miss any?

3          MR. ORENSTEIN:  I don't believe so, Judge.

4          MR. ORENSTEIN:  Just to make sure the record is

5    clear, perhaps you could inquire of each defendant if they

6    understood all the maximum and minimum amounts.

7          THE COURT:  I will do that.

8          Mr. Zappola, do you have any question in terms of

9    your understanding of all of the penalties that apply to

10   pleading guilty to those charges?

11         DEFENDANT ZAPPOLA:  No.  No question.

12         THE COURT:  Obviously, there's a whole bunch of them.

13         DEFENDANT ZAPPOLA:  I wouldn't remember them anyway

14   so I am not going to ask.

15         THE COURT:  Mr. Conte, anything you may not

16   understand?

17         Do you understand any penalties associated with these

18   crimes you contemplate pleading guilty to?

19         DEFENDANT CONTE:  Yes.

20         THE COURT:  I am not going to read the entire plea

21   agreement.  I have no fear about that.  I am satisfied that

22   you have acknowledged that you understand this, that your

23   attorneys will acknowledge to me now that they have fully

24   explained the plea agreement to their respective clients.

25         Mr. LaRossa, if that's not the case so tell me.

1        MR. LA ROSSA: That is the case, your Honor.

2        THE COURT:  Are you satisfied they understand each

3  and every aspect of the intricacies of this agreement?

4        MR. LA ROSSA: Completely.

5        THE COURT:  Mr. Watanabe, how about you on behalf of

6  your client?

7        MR. WATANABE:   I have explained to him, Judge.  He

8  understands.

9        THE COURT:  I think under those circumstances there

10  is no need for me to go through this, except the waiver issue

11  is something which is worthy of highlighting I guess.

12        The agreement provides that if I were to reject the

13  plea agreement, then the defendants will have an opportunity

14  to withdraw the plea.  If I do not reject the plea agreement,

15  then you're bound by it, and you will not be able to withdraw

16  the plea come what may.

17        I previously told you that if I were to sentence you

18  improperly, incorrectly, contrary to the law, then your only

19  remedy would be to appeal but you could not withdraw your plea

20  of guilty.

21        Do you understand that perfectly well, Mr. Zappola?

22        DEFENDANT ZAPPOLA:  Yes.

23        THE COURT:  Do you understand that perfectly well,

24  Mr. Conte?

25        DEFENDANT CONTE:  Yes.

27

1          THE COURT:  Also, with respect to what Mr. Orenstein

2    alluded to before, that in Paragraph 3 of the plea agreement

3    each of you defendants agree not to file an appeal in the

4    event that the Court imposes a sentence at or below that set

5    forth in Paragraph 2 which spells out the sentence agreement

6    under Rule 11 of the criminal rules.

7          That is what you were referring to before,

8    Mr. Orenstein?

9          MR. ORENSTEIN:  It was, Judge.  Thank you.

10         THE COURT:  I just want to pause to commend all of

11   you for the effort that you made in being very specific in

12   terms of the names of the people that are set forth in

13   Paragraph 4.  I think attention to that type of draftsmanship

14   is very important in these matters, as you probably realize,

15   and you are to be commended for making that type of effort

16   here.  I think it just can save an awful lot of possible

17   problems that could possibly surface in the future, I am happy

18   to say.

19         MR. WEINSTEIN:  While we're on Paragraph 4, the

20   language you are talking about I assume is where the

21   government agrees not to bring any further criminal charges

22   against the defendants for information provided by them and it

23   lists a number of cooperating witnesses.

24         I think it's important just to put on the record that

25   the way we got to that, and included that specific language,

28

1   the intent of the parties, was to cover all known crimes by

2   the government.  And the government, I believe, is ready to

3   represent that they are not aware of any information from

4   other individuals which would not also be covered by the

5   individuals mentioned in the agreement?

6          THE COURT:  Is that an accurate representation by

7   counsel, Mr. Orenstein?

8          MR. ORENSTEIN:  Judge, we have endeavored, and it is

9   my understanding that all of the understandings between the

10  parties are reflected in this agreement and that nothing that

11  is said in this room is going to alter, amend, or add to those

12  understandings.

13         Now, with respect to what Mr. Weinstein has just

14  said, it is the government's understanding that there are no

15  additional crimes that we intend to prosecute.  It is

16  explicitly spelled out.  We do not have the power to bind

17  other districts.  However, I have made a representation that I

18  personally do not know of any other pending charge,

19  investigation, that may result in an indictment of these

20  defendants.  I wanted to be explicit that I don't have the

21  power to bind other districts.

22         THE COURT:  Are you representing that the Eastern

23  District office has no such knowledge?

24         MR. ORENSTEIN:  I have been asked for representation

25  of my personal knowledge.  I have none.  I cannot speak beyond

1  that.   The plea agreement which we have worked very hard to

2  come to has the terms that we agreed to.   Those terms are that

3  we have debriefed the witnesses who are named here.   Those

4  witnesses have provided us with information.   We do not intend

5  to charge these defendants further with any crimes that these

6  witnesses have provided us information about.

7             THE COURT:   "We" meaning the Eastern District?

8             MR. ORENSTEIN:   Exactly.

9             THE COURT:   Is that perfectly understood?

10            MR. LA ROSSA: Can we go off the record for a minute,

11  please; permit counsel to talk?

12            THE COURT:   You need a chance to chat with each

13  other?

14            MR. LA ROSSA:   Yes.

15            THE COURT:   Let's do that.

16            (Pause).

17            THE COURT:   The record should be clear nothing is

18  transpiring off the record except we are accommodating

19  Mr. LaRossa's request in asking for the opportunity to talk

20  with Mr. Orenstein.

21            (Pause)

22            THE COURT: You have had an opportunity to chat with

23  Mr. Orenstein?

24            MR. ORENSTEIN:   For the record, we have remained on

25  the record; we were just conferring among ourselves.

D.Pereira, OCR

30

1        The Eastern District is not aware of any crimes,

2   criminal activity other than the information that's been

3   provided by these named witnesses.  Thus, if there are other

4   people who are providing information, as far as we are aware,

5   they are not providing information about crimes not also --

6   let me start again.

7        THE COURT:  Start from the beginning.

8        MR. ORENSTEIN:  To the extent there may be other

9   people who are providing information to us, that information,

10  as far as we are aware, is duplicative of information provided

11  by named witnesses in this instrument.  Therefore, there are

12  no additional crimes that we are aware of.

13       MR. WEINSTEIN:  Which gets us back to the proposition

14  that we started with, which is this sentence represents all

15  known crimes in the Eastern District?  It is just worded in

16  this fashion so that we wanted to be sure, for example, by

17  naming these individuals -- my concern was, for example, if

18  there was information provided by somebody who is not listed

19  here, is that covered?

20       And Mr. Orenstein represented to the extent that

21  there was any information provided by people not listed, it

22  would also be duplicative of the information provided by the

23  people named in the agreement.

24       MR. ORENSTEIN:  That's correct.

25       MR. WATANABE:  That is our understanding as well,

31

1  Judge.

2      MR. ORENSTEIN:  That is not intended, I am sure

3  counsel will agree, as an alteration of anything that's in the

4  written agreement.

5      MR. WEINSTEIN:  No.  Just to explain how we got to

6  naming those particular people.

7      THE COURT:  You are all being appropriately

8  circumspect.  I think that suffices.

9      My own sense of these things is that if there is any

10 misrepresentation by the government that rises to the level of

11 the equivalent of bad faith, that is the type of thing that

12 would come under due process principles.  We had discussions

13 about this in the course of the hearing that we had.  But I am

14 satisfied that you gentlemen have done the best that you can

15 to try to contemplate possibilities where we do not have a

16 crystal ball, perhaps, in front of us.  I don't think we can

17 do better than what you have done right here.

18     So with this colloquy in place now, I will ask

19 specifically, to be redundant, perhaps, Mr. Zappola and Mr.

20 Conte, whether you have any questions whatsoever about

21 anything that was said in court today, any other

22 representation made by respective counsel, anything contained

23 in the plea agreement, anything that I have endeavored to

24 explain to you in terms of your rights, the waiver of your

25 rights, or anything else that may be on your mind right now?

32

1         This is a chance to speak to the judge.

2  Mr. Zappola?

3         DEFENDANT ZAPPOLA:  No.

4         THE COURT:  You are okay with everything?

5         DEFENDANT ZAPPOLA:  Yes.

6         THE COURT:  Mr. Conte, how about you?

7         MR. WATANABE:   One minute, Judge.

8         DEFENDANT CONTE:  Yes, I understand, your Honor.

9         THE COURT:  All right.

10        Now, I ask each of you whether or not your

11  willingness to plead guilty results from discussions that took

12  place between the attorneys for the government and the

13  defendants or the defendants' attorneys.  Mr. LaRossa and Mr.

14  Watanabe, is there anything else other than what has been

15  spoken about in court today in respect to the negotiations

16  that have transpired and whether or not they have had an

17  impact upon your client's agreeing to this plea agreement and

18  agreeing to ultimately plead guilty?

19        MR. LA ROSSA:   No, sir.

20        THE COURT:  Mr. Watanabe?

21        MR. WATANABE:   No, Judge.

22        THE COURT:  Okay.

23        Now, Mr. Zappola and Mr. Conte, other than the

24  promises outlined in the plea agreements, has anyone made any

25  promises that caused you to contemplate pleading guilty?

D.Pereira, OCR

33

1        Yes or no?

2        DEFENDANT ZAPPOLA:  No.

3        THE COURT:  Mr. Conte?

4        DEFENDANT CONTE:  No.

5        THE COURT:  And, of course, what I have explained to

6   you in respect to the plea agreement as well.

7        And I ask  each of you, has anyone made any promises

8   as to what your sentence will be other than that what is

9   contained in the plea agreement and as explained in Court

10  today?

11       DEFENDANT ZAPPOLA:  No.

12       THE COURT:  Mr. Conte?

13       DEFENDANT CONTE:  No.

14       THE COURT:  All right.

15       I want to just reinforce that, of course, the plea

16  agreement does set forth the agreed-upon sentence under

17  Rule 11 of the Criminal Rules and that you will be sentenced

18  in accordance with the agreement and specifically as set forth

19  in Rule 11 and as required by law and that I will be obliged

20  to comply with the law in respect to that.  I am not going to

21  go into more detail since I am satisfied that it is fully set

22  forth in the plea agreement.

23       At this time, I am going to ask you, Mr. Zappola,

24  whether you are ready to plead.  Just tell me yes or no.

25       DEFENDANT ZAPPOLA:  Yes.

34

1          THE COURT:  Mr. Conte, are you ready to plead, yes or

2  no?

3          DEFENDANT CONTE:  Yes, sir.

4          THE COURT:  Mr. LaRossa, do you know of any reason

5  why your client should not plead guilty to all of these

6  charges?

7          Are you aware of any legal defense to the charges?

8          MR. LA ROSSA:   No, your Honor.

9          THE COURT:  Mr. Watanabe, what say you in respect to

10  those questions?

11          MR. WATANABE:  No, Judge.

12          THE COURT:  Mr. Orenstein and/or Mr. Kelly, are you

13  aware of any information that the Court should be told about

14  that could possibly affect my willingness to accept these

15  pleas that are being contemplated here?

16          MR. ORENSTEIN:  The government is aware of no

17  information that should dissuade you from taking these pleas.

18          THE COURT:  All right.

19          First, Mr. Zappola, I am going to ask you the

20  following:

21          How do you plead in respect to Count One of the

22  indictment; guilty or not guilty?

23          DEFENDANT ZAPPOLA:  Guilty.

24          THE COURT:  How do you plead in respect to Count Two

25  of the indictment; guilty or not guilty?

1          DEFENDANT ZAPPOLA:  Guilty.

2          THE COURT:  How do you plead in respect to

3    Counts 4, 13 and 15 of the indictment and Counts One and Two

4    of the information?

5          DEFENDANT ZAPPOLA:  Guilty.

6          THE COURT:  In respect to each count of the

7    information and each count of the indictment?

8          DEFENDANT ZAPPOLA:  Yes, your Honor.

9          THE COURT:  How do you plead in respect to each:

10   Counts Three, Five, Seven and Six, Seven, Twelve, Fourteen and

11   Sixteen of the indictment and Counts Three through Six of the

12   information; guilty or not guilty?

13         DEFENDANT ZAPPOLA:  Guilty.

14         THE COURT:  How do you plead in respect to Count

15   Nineteen of the indictment; not guilty or guilty?

16         DEFENDANT ZAPPOLA:  Guilty.

17         THE COURT:  How do you plead with respect to Count

18   Twenty of the indictment;  guilty or not guilty?

19         DEFENDANT ZAPPOLA:  Guilty.

20         THE COURT:  How do you plead to Count Twenty-one of

21   the indictment; guilty or not guilty?

22         DEFENDANT ZAPPOLA:  Guilty.

23         THE COURT:  Mr. Conte, before I get to you:

24         Mr. Zappola, are you making these pleas of guilty

25   voluntarily and of your own free will?

36

1          DEFENDANT ZAPPOLA:  Yes.

2          THE COURT:  Has anyone threatened or forced you to

3     plead guilty to any of these counts?

4          DEFENDANT ZAPPOLA:  No.

5          THE COURT:  Has anyone made any promises as to what

6     your sentence will be other than what is contained in the plea

7     agreement and what's been discussed in court today?

8          DEFENDANT ZAPPOLA:  No.

9          THE COURT:  Mr. Conte?

10          DEFENDANT CONTE:  Yes.

11          THE COURT:  Are you ready to plead guilty at this

12     time?

13          DEFENDANT CONTE:  Yes, sir.

14          THE COURT:  Mr. Watanabe, do you know of any reason

15     why your client should not plead guilty to these charges?  Are

16     you aware of any legal defense to the charges?

17          MR. WATANABE:   No, Judge.

18          THE COURT:  And, Mr. Orenstein, once again, does the

19     government have any knowledge that should be imparted to the

20     Court with respect to my willingness to accept these pleas?

21          MR. ORENSTEIN:  We're aware of nothing that should

22     dissuade you.

23          THE COURT:  At this time, Mr. Conte, I ask you, what

24     is your plea in respect to each of Counts One and Two of the

25     indictment; guilty or not guilty?

37

1          DEFENDANT CONTE:  Guilty.

2          THE COURT:  What is your plea in respect to each of

3   Count Fifteen of the indictment and Counts One through Three

4   of the information; guilty or not guilty?

5          DEFENDANT CONTE:  Guilty.

6          THE COURT:  What is your plea in respect to each

7   Counts Six, Seven, Eight, Fourteen and Sixteen of the

8   indictment, and Counts Four through Six of the information;

9   guilty or not guilty?

10         DEFENDANT CONTE:  Guilty.

11         THE COURT:  What is your plea in respect to Count

12   Nineteen of the indictment; guilty or not guilty?

13         DEFENDANT CONTE:  Guilty.

14         THE COURT:  What is your plea with respect to Count

15   Twenty of the indictment; guilty or not guilty?

16         DEFENDANT CONTE:  Guilty, your Honor.

17         THE COURT:  What is your plea in respect to Count

18   Twenty-one of the indictment; guilty or not guilty?

19         DEFENDANT CONTE:  Guilty.

20         THE COURT:  Are you making these pleas of guilty

21   voluntarily and of your own free will, Mr. Conte?

22         DEFENDANT CONTE:  Yes, I am.

23         THE COURT:  Has anyone threatened or forced you to

24   plead guilty to any of these counts or charges?

25         DEFENDANT CONTE:  No, sir.

38

1        THE COURT:  Has anyone made any promises to you as to

2   what your sentence will be in respect to this other than

3   what's set forth in the plea agreement and as explained to you

4   in Court today?

5        DEFENDANT CONTE:  No, sir.

6        THE COURT:  Now, at this time, I guess I will start

7   with Mr. Zappola in terms of the allocutions.

8        Mr. Zappola, you can stay seated.

9        I am not going to read to you all of these counts but

10  just, perhaps, it might be helpful if I were to just highlight

11  some of the aspects of these counts just to maybe assist you

12  in your allocution.

13       Count One of the indictment refers to dates between

14  January 1978 to the present date and charges you and others

15  with being employed by and associated with the Luchese Crime

16  Family, which enterprise engaged in, and the activities of

17  which affected, interstate commerce.  And it goes on to charge

18  you with willfully, unlawfully and knowingly conducting and

19  participating, directly and indirectly, in the conduct of the

20  affairs of that enterprise through a pattern of racketeering

21  activity, and specifically sets forth a number of multiple

22  racketeering acts.

23       At this time, I am going to ask you to tell me, what

24  did you do in respect to that count that would warrant my

25  accepting your plea of guilty in respect thereto?

39

1          DEFENDANT ZAPPOLA:  This is Count One.

2          THE COURT:  Count One.

3          DEFENDANT ZAPPOLA:  From in or about early 1987 and

4   January 1996 in the Eastern and Southern District of New York

5   and elsewhere, I was associated with an association in fact

6   enterprise consisting of myself and others whose activities

7   affected interstate commerce.  During that time period I

8   willfully and knowingly conducted and participated in the

9   conduct of the affairs of that association in fact enterprise

10  through a pattern of racketeering activity.  I committed the

11  following racketeering acts, among others.

12          Racketeering Act One:  Conspiracy to murder Michael

13  Pappadio.  From in or about and between approximately 1988 and

14  May 13, 1989, I conspired and agreed with others to murder

15  Mike Pappadio in violation of New York Penal Law.

16          In furtherance of the conspiracy, I shot Michael

17  Pappadio on or about May 13, 1989.

18          THE COURT:  I will take them individually.

19          Based on the information given to me by Mr. Zappola,

20  I find that he is acting voluntarily, he fully understands his

21  rights and the consequences of his plea of guilty to Count One

22  of the indictment and there is indeed a factual basis for that

23  plea.  I will, therefore, accept a plea of guilty to Count One

24  of the indictment.

25          MR. LA ROSSA:  Your Honor, we would like him to

40

1  allocute to the other racketeering acts.  I am afraid we have

2  no choice, sir.  There are double jeopardy factors here.

3  There are other jurisdictions.

4          THE COURT:  I didn't mean to be precipitous.

5  Legally, if he allocuted to one it is sufficient.

6          MR. LA ROSSA:   I think you are right but we have a

7  problem with it.

8          THE COURT:  Mr. Orenstein.

9          MR. ORENSTEIN:  Judge, he allocuted to one

10 racketeering act.

11         THE COURT:  We need two.

12         MR. ORENSTEIN:  You need at least two to form a

13 pattern.

14         THE COURT:  You are right.  You want to allocute to

15 all of them?

16         MR. WATANABE:   Yes, Judge.

17         MR. LA ROSSA:   Afraid so, sir.

18         Your Honor, could I read them?  There is no reason

19 why I can't.

20         MR. ORENSTEIN:  As long as he affirms the truth.

21         MR. LA ROSSA:   I can.

22         THE COURT:  Listen carefully, Mr. Zappola, because I

23 am going to ask you whether you understand and whether you

24 agree.

25         MR. LA ROSSA:   Murder of Michael Pappadio.

41

1          "On or about May 13, 1989, I knowingly, willfully and

2    intentionally murdered and aided and abetted the murder of

3    Michael Pappadio in violation of the New York Penal Law.

4          Racketeering Act Number Two, conspiracy to murder

5    Julius Calder.

6          "From in or about and between approximately 1988 and

7    June 2nd, 1989, I conspired and agreed with others to murder

8    Julius Calder, in violation of the New York Penal Law.

9          "In furtherance of the conspiracy I attempted to

10   murder Julius Calder at a diner in Brooklyn in early 1989."

11         Racketeering Act Three:  Conspiracy to Murder - The

12   New Jersey Faction:

13         "From in or about and between approximately 1989 and

14   1991, I conspired with others to murder Anthony Accetturo,

15   Sr., Anthony Accetturo, Jr., Thomas Ricciardi, Joseph LaMorte,

16   and others whom the government has referred to collectively as

17   The New Jersey Faction, in violation of New York Penal Law.

18         "In furtherance of the conspiracy I traveled to

19   Florida in 1988 and 1989 to assist in efforts to locate these

20   people."

21         Racketeering Act Number Four:  Conspiracy to Murder

22   Peter Chiodo.

23         "From in or about and between 1990 and the spring of

24   1991, I conspired and agreed with others to murder Peter

25   Chiodo, in violation of New York Penal Law.

42

1          "In furtherance of the conspiracy, I assisted others

2   in attempting to locate Peter Chiodo for the purpose of

3   killing him."

4          Racketeering Act Number Seven.  We are skipping Five

5   and Six.

6          MR. ORENSTEIN:  He is not charged with Five and Six.

7          MR. LA ROSSA:   Number Seven:  Conspiracy to murder

8   James Bishop.

9          "From in or about and between approximately April

10  1990 and May 17, 1990, I conspired and agreed with others to

11  murder James Bishop, in violation of the New York Penal Law.

12         "In furtherance of the conspiracy I shot James Bishop

13  on or about May 17, 1990."

14         Murder of James Bishop: "On or about May 17, 1990, I

15  knowingly, willfully and intentionally murdered and aided and

16  abetted the murder of James Bishop, in violation of the New

17  York Penal Law."

18         Racketeering Act Eight:  Conspiracy to murder Frank

19  Mariconda.

20         "From in or about and between approximately

21  December '91 and February 9th, 1992, I conspired and agreed

22  with others to murder Frank Mariconda in violation of the New

23  York Penal Law.

24         "In furtherance of the conspiracy I met with others

25  to plan the murder of Frank Mariconda.

1    "On or about February 9, 1992, I knowingly, willfully

2    and intentionally murdered and aided and abetted the murder of

3    Frank Mariconda, in violation of New York Penal Law."

4    Racketeering Act Nine - conspiracy to murder Richard

5    Taglianetti:

6    "From in or about and between approximately 1983 and

7    July 23rd, 1992, I conspired with others to murder Richard

8    Taglianetti, in violation of the New York Penal Law.

9    "In furtherance of the conspiracy, I conducted

10   surveillance in Staten Island during the spring and summer of

11   1992, for the purpose of locating and murdering Richard

12   Taglianetti."

13   Murder of Richard Taglianetti:

14   "On or about July 23, 1992, I knowingly, willfully

15   and intentionally murdered and aided and abetted the murder

16   of Richard Taglianetti, in violation of the New York Penal

17   Law."

18   Racketeering Act Ten - Conspiracy to murder Richard

19   Guiga.

20   "From in or about and between approximately 1990 and

21   1993 I conspired and agreed with others to murder Richard

22   Guiga, in violation of the New York Penal Law.

23   "In furtherance of the conspiracy I conducted

24   surveillance in or about February 1992, in Manhattan, for the

25   purpose of locating and murdering Richard Guiga."

44

1          THE COURT:  Thank you, Mr. LaRossa.

2          Now, Mr. Zappola, there's an awful lot that was read

3     by Mr. LaRossa.  I want to make sure that you understand

4     everything that was read, that these are your words, that you

5     adopt them, that you agree with everything that was read and

6     this does represent your confession and your admission in

7     respect to Count One.

8          Is there any question about that whatsoever?

9          DEFENDANT ZAPPOLA:  No.

10         THE COURT:  Now, I will at this time specifically

11    rule in respect to each of these pleas as we go along that

12    there is a factual basis for the plea.  As I said before, I

13    think all you need are two racketeering acts, but for reasons

14    that are good and sufficient reasons known to defense counsel,

15    and perhaps to the government as well, all of those were

16    allocuted to.

17         MR. LA ROSSA:   So the record is perfectly clear,

18    there is no issue about the fact that Mr. Zappola is openly

19    affirming the violation of the law of this count.  He is not

20    agreeing, though, to all of the background of this count that

21    has nothing to do in effect with the crime itself.  His

22    allocution is his admission of the crime.

23         THE COURT:  I am not so sure I know exactly what that

24    means.

25         MR. LA ROSSA:   There are some things in there.  The

D.Pereira, OCR

45

1  background of the count refers to people --

2          THE COURT:  I am only talking about what he allocuted

3  to.

4          MR. LA ROSSA:   That's my point.

5          THE COURT:  Are you suggesting that I have heard more

6  than I need in order to accept the plea of guilty to Count

7  One?

8          MR. LA ROSSA:   That wasn't in response to what you

9  said.  This is kind of "making the record clear" that he's not

10 accepting all of the background information.

11         THE COURT:  He's not accepting everything that's set

12 forth in the indictment?

13         MR. LA ROSSA:  -- in the indictment other than his

14 allocution.

15         MR. ORENSTEIN:  Judge, we agree that the allocution

16 is sufficient.  We, of course, stand ready to prove, if

17 necessary, everything that is in the indictment.

18         THE COURT:  Based on all this information I find that

19 the defendant is acting voluntarily, fully understands his

20 rights, the consequences of his plea and that there is indeed

21 a factual basis for the plea of guilty to Count One of the

22 indictment.  I will therefore accept the plea of guilty to

23 that count.

24         Let's move on to Count Two.

25         Count Two refers to a period of time between January

D.Pereira, OCR

46

1   1978 to the present date.  It charges the defendant with

2   racketeering conspiracy and specifically that he, together

3   with others, conspired to conduct and participate, directly

4   and indirectly, in the conduct of the affairs of the

5   particular enterprise set forth in this indictment through a

6   pattern of racketeering activity by agreeing to commit and

7   actually committing the acts of racketeering with which each

8   such defendant is charged in Count one.

9           In terms of the conspiracy allocution, Mr. LaRossa,

10  what do you propose?  Is he able to allocute on his own or

11  does he need any assistance?

12          MR. LA ROSSA:    Yes, your Honor.  It might go

13  faster.

14          THE COURT:  Why don't you do that.

15          Is it acceptable?

16          MR. ORENSTEIN:  As long as whatever Mr. LaRossa

17  states is adopted by Mr. Zappola.

18          THE COURT:  I will ask him specifically after each of

19  those allocutions.

20          MR. LA ROSSA:    Count Two.

21          "From in or about and between the early 1990s and

22  January 1996, in the Eastern and Southern Districts of New

23  York and elsewhere, I, being employed by and associated with

24  an association in fact enterprise consisting of myself and

25  others, which enterprise engaged and the activities of which

47

1  affected interstate commerce, conspired and agreed to conduct

2  and participate, both directly and indirectly, in the conduct

3  of the affairs of that enterprise through a pattern of

4  racketeering activity by agreeing to commit and actually

5  committing, among others, each of the acts of racketeering to

6  which I have previously allocuted in connection with Count

7  One.

8          THE COURT:  All right.

9          The Court is satisfied that that represents a factual

10 basis for the plea, provided that Mr. Zappola clearly advises

11 the Court that that does represent your allocution and that

12 you adopt what was read by Mr. LaRossa in respect to Count

13 Two.

14         Any question about that?

15         DEFENDANT ZAPPOLA:  No.

16         THE COURT:  All right.

17         I will, therefore, accept the plea of guilty to Count

18 Two and once again I find that the defendant is acting

19 voluntarily with respect to that count, fully understands his

20 rights and the consequences of his plea of guilty to that

21 count, and I specifically have found that there is a factual

22 basis for the plea.

23         Let's move on to Count Three.

24         MR. WEINSTEIN:  He is actually pleading to every

25 count.

48

1          THE COURT:  Okay.  I can do it that way.  What I am

2     doing is following the format set forth in the plea agreement.

3          MR. ORENSTEIN:  The plea agreement grouped it by the

4     sentencing options available for each count.  However, it is

5     possible to just work through the indictment.

6          MR. LA ROSSA:   Every count is covered, your Honor.

7          THE COURT:  All right.

8          Count Three, Conspiracy to murder Mike Pappadio

9     refers to the dates between 1988 and May 13, 1989, and in

10    simplified form, talks about conspiring to murder Michael

11    Pappadio, in violation of New York Penal Law.

12         Mr. LaRossa.

13         MR. LA ROSSA:  "From in or about between

14    approximately 1988 and May 13th, 1989, in the Eastern and

15    Southern Districts of New York and elsewhere, and for the

16    purpose of maintaining and increasing my position in an

17    association in fact enterprise consisting of myself and

18    others, which enterprise engaged in racketeering activity, I

19    conspired and agreed with others to murder Michael Pappadio in

20    violation of the New York Penal Law.

21         THE COURT:  Do you adopt that?  Do you agree with

22    that, Mr. Zappola?

23         DEFENDANT ZAPPOLA:  Yes.

24         THE COURT:  All right.

25         I find specifically that the defendant is acting

49

1    voluntarily, fully understands his rights and the consequences

2    of his plea in respect to Count Three and that there is indeed

3    a factual basis for that plea.  I will therefore accept a plea

4    of guilty to Count Three of the indictment.

5            Count Four refers to the actual murder of Michael

6    Pappadio on or about May 13, 1989.  What is the allocution

7    with respect to Count Four?

8            MR. LA ROSSA:   On or about May 13, 1989, in the

9    Eastern District of New York, and for the purpose of

10   increasing my position in an association in fact enterprise

11   consisting of myself and others, which enterprise engaged in

12   racketeering activity, I murdered Michael Pappadio, in

13   violation of the New York Penal Law."

14           THE COURT:  We'll go straight through and I will make

15   my determinations thereafter.

16           MR. LA ROSSA:   Fine, sir.

17           THE COURT:  Count five charges Mr. Zappola with

18   conspiracy to murder Julius Calder.

19           MR. LA ROSSA:  "From in or about and between

20   approximately 1988 and June 2, 1989, in the Eastern and

21   Souther Districts of New York and elsewhere, and for the

22   purpose of maintaining and increasing my position in an

23   association in fact enterprise consisting of myself and

24   others, which enterprise engaged in racketeering activity, I

25   conspired and agreed with others to murder Julius Calder, in

50

1    violation of the New York Penal Law.

2            THE COURT:  All right.

3            I will pause just to ask, Mr. Zappola, whether you

4    agree that with respect to the murder of Michael Pappadio,

5    that the allocution is correct, and that you adopt and you

6    embrace and you agree with what has been read by Mr. LaRossa?

7            DEFENDANT ZAPPOLA:  Pappadio or Calder?

8            MR. LA ROSSA:    That was Calder, but Pappadio before

9    that.

10           THE COURT:  Pappadio before that.

11           DEFENDANT ZAPPOLA:  Yes.

12           THE COURT:  How about with respect to Calder?

13           DEFENDANT ZAPPOLA:  Yes.

14           THE COURT:  You agree with all of that?

15           DEFENDANT ZAPPOLA:  Yes.

16           THE COURT:  You adopt that?

17           DEFENDANT ZAPPOLA:  Yes.

18           THE COURT:  Count Six deals with conspiracy to murder

19    - The New Jersey Faction.  It refers to dates in or about and

20    between 1988 and 1991.

21           Mr. LaRossa.

22           MR. LA ROSSA:  "From in or about and between

23    approximately 1988 and 1991, in the Eastern and Southern

24    Districts of New York and elsewhere, and for the purpose of

25    maintaining and increasing my position in an association in

D.Pereira, OCR

51

1  fact enterprise consisting of myself and others, which

2  enterprise engaged in racketeering activity, I conspired to

3  murder Anthony Accetturo, Sr., Anthony Accetturo, Jr., Thomas

4  Ricciardi, Joseph LaMorte and others, whom the government has

5  referred to collectively as the New Jersey Faction, in

6  violation of the New York Penal Law.

7          THE COURT:  Do you agree with that, Mr. Zappola?

8          DEFENDANT ZAPPOLA:  Yes.

9          THE COURT:  Is there any question whether that is

10  correct?  You have no question about that?

11          DEFENDANT ZAPPOLA:  No.

12          THE COURT:  Count Seven, conspiracy to murder Peter

13  Chiodo.

14          MR. LA ROSSA:  "From in or about and between

15  approximately early 1991 and May 8, 1991, in the Eastern and

16  Southern Districts of New York and elsewhere, and for the

17  purpose of maintaining and increasing my position in an

18  association in fact enterprise consisting of myself and

19  others, which enterprise engaged in racketeering activity, I

20  conspired and agreed with others to murder Peter Chiodo, in

21  violation of the New York Penal Law."

22          THE COURT:  Do you agree with that, Mr. Zappola?

23          DEFENDANT ZAPPOLA:  Yes.

24          THE COURT:  I think we move forward now to

25  Count Twelve.

D.Pereira, OCR

52

1          MR. LA ROSSA:   Yes, we do, your Honor.

2          THE COURT:  That's a conspiracy to murder Frank

3    Mariconda.

4          MR. LA ROSSA:   "From in or about and between

5    approximately December 1991 and February 9, 1992, in the

6    Eastern and Southern Districts of New York and elsewhere, and

7    for the purpose of maintaining and increasing my position, in

8    an association in fact enterprise, consisting of myself and

9    others, which enterprise engaged in racketeering activity, I

10   conspired and agreed with others to murder Frank Mariconda, in

11   violation of the New York Penal Law."

12         THE COURT:  Do you concur in that, Mr. Zappola?

13         DEFENDANT ZAPPOLA:  Yes.

14         THE COURT:  Any question?  Any doubts about the

15   accuracy of what was just stated by Mr. LaRossa?

16         DEFENDANT ZAPPOLA:  No.

17         THE COURT:  No?

18         DEFENDANT ZAPPOLA:  No.

19         THE COURT:  Next Count Thirteen, the actual murder of

20   Frank Mariconda.

21         MR. LA ROSSA:   "On or about February 9, 1992, in the

22   Eastern and Southern Districts of New York and elsewhere, and

23   for the purpose of maintaining and increasing my position, in

24   an association in fact enterprise, consisting of myself and

25   others, which enterprise engaged in racketeering activities, I

53

1   murdered and aided and abetted the murder of Frank Mariconda,

2   in violation of the New York Penal Law.

3           THE COURT:  Mr. Zappola, once again, do you agree

4   with that?  Do you have any question about the accuracy of

5   what was just stated by Mr. LaRossa?

6           DEFENDANT ZAPPOLA:  No.

7           THE COURT:  You agree with, you have no problems

8   with?

9           DEFENDANT ZAPPOLA:  Yes.

10          THE COURT:  You adopt it as your words?

11          DEFENDANT ZAPPOLA: Yes.

12          THE COURT:  Count Fourteen, conspiracy to murder

13  Richard Taglianetti.

14          MR. LA ROSSA:  "From in or about and between

15  approximately 1983 and July 23, 1992, in the Eastern and

16  Southern Districts of New York and elsewhere, and for the

17  purpose of maintaining and increasing my position in an

18  association in fact enterprise, consisting of myself and

19  others, which enterprise engaged in racketeering activity, I

20  conspired and agreed with others to murder Richard

21  Taglianetti, in violation of the New York Penal Law.

22          THE COURT:  Once again, Mr. Zappola, do you have any

23  question about the accuracy of what was just stated by

24  Mr. LaRossa?

25          DEFENDANT ZAPPOLA:  No.  I murdered Taglianetti.

54

1    THE COURT:  You agree with what was said?

2    DEFENDANT ZAPPOLA:  Right.

3    THE COURT:  All right.

4    Let's deal with Count Fifteen next, which is the

5    actual murder of Taglianetti.

6    MR. LA ROSSA:  On or about July 23, 1992, in the

7    Eastern and Southern Districts of New York and elsewhere, and

8    for the purpose of maintaining and increasing my position in

9    an association in fact enterprise consisting of myself and

10   others, which enterprise engaged in racketeering activity, I

11   murdered and aided and abetted the murder of Richard

12   Taglianetti, in violation of the New York Penal Law.

13   THE COURT:  Is that correct, Mr. Zappola?

14   DEFENDANT ZAPPOLA:  I did it.  Yes.

15   THE COURT:  Count Sixteen, conspiracy to murder

16   Richard Guiga.

17   MR. LA ROSSA:  "From in or about and between

18   approximately 1990 and 1993, in the Eastern and Southern

19   Districts of New York and elsewhere, and for the purpose of

20   maintaining and increasing my position in an association in

21   fact enterprise consisting of myself and others, which

22   enterprise engaged in racketeering activity, I conspired and

23   agreed with others to murder Richard Guiga, in violation of

24   the New York Penal Law."

25   THE COURT:  Is that true?

55

1          DEFENDANT ZAPPOLA:  Yes.

2          THE COURT:  All right.

3          We move now to Count Nineteen, accessory after the

4   fact, referring to the dates between May 30, 1990 and January

5   19th, 1993.

6          Mr. LaRossa.

7          MR. LA ROSSA:  "From in or about and between

8   approximately May 30, 1990 and January 19, 1993, in the

9   Eastern and Southern Districts of New York and elsewhere, I

10  knowingly and intentionally received, relieved, comforted and

11  assisted Anthony Casso in order to hinder and prevent his

12  apprehension, trial and punishment, knowing that Anthony Casso

13  had committed various offenses against the United States,

14  including, but not limited to, conspiracy to commit murder,

15  attempted murder and murder, all in aid of racketeering, in

16  violation of 18, U.S.C., Section 1959.

17         THE COURT:  Once again, Mr. Zappola, I know this may

18  be sounding monotonous, but I am going to make sure that what

19  Mr. LaRossa is reading is understood by you.

20         Does that represent your words and do you agree with

21  everything he says and do you adopt that with respect to that

22  count, as well as the others?

23         DEFENDANT ZAPPOLA:  Yes, I do.

24         THE COURT:  All right.

25         At this time, I think we are up to Count Twenty.

56

1          MR. LA ROSSA:  "From in or about May 30, 1990, and

2   January 19, 1939, in the Eastern and Southern Districts of New

3   York and elsewhere, I knowingly and intentionally harbored and

4   concealed Anthony Casso, for whose arrest a warrant had been

5   issued by the federal government, in order to prevent his

6   discovery and arrest, after I had notice and knowledge of the

7   fact that such a warrant had been issued for his

8   apprehension."

9          THE COURT:  Once again, Mr. Zappola, do you concur

10  with what was stated by Mr. LaRossa, do you adopt those as

11  your own words?

12         DEFENDANT ZAPPOLA:  Yes, I do.

13         THE COURT:  Count Twenty-one, the last count before

14  we get to the information.

15         MR. LA ROSSA:  "From in or about and between 1978 and

16  January 1996, in the Eastern and Southern Districts of New

17  York and elsewhere, I conspired and agreed with others to

18  defraud the United States by impeding, impairing, obstructing

19  and defeating the lawful functions of the Treasury Department

20  the ascertainment, computation and collection of income taxes

21  due and owing for myself and others.

22         "In furtherance of the conspiracy, I filed a false

23  and misleading federal income tax return on or about July

24  25th, 1990, for the year 1989.

25         THE COURT:  For the sake of having a brief pause, let

57

1    me rule that in respect to each of these counts in the

2    indictment to which the defendant has pled guilty -- and I

3    take it you also adopt what Mr. LaRossa has just stated in

4    respect to Count Twenty-one, Mr. Zappola, as well?

5            DEFENDANT ZAPPOLA:  Yes.

6            THE COURT:  With respect to each of these that I have

7    not attended to before, which would be Counts Four, Five, Six,

8    Seven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Nineteen,

9    Twenty, Twenty-one, I find that the defendant is acting

10   voluntarily with respect to each of these, fully understands

11   his rights and consequences of his plea of guilty to each of

12   those counts in the indictment, and that there is indeed a

13   factual basis for the plea of guilty to each of those counts.

14   I, therefore accept the pleas of guilty to those counts, and

15   at this time we will move to the counts set forth in the

16   information.

17           With respect to that, Count One charges the defendant

18   with the murder of Anthony DiLapi on or about February 4,

19   1990.

20           Mr. LaRossa.

21           MR. LA ROSSA:  "On or about February 4, 1990, in the

22   Eastern and Southern Districts of New York, the Central

23   District of California and elsewhere, and for the purpose of

24   maintaining and increasing my position in an association in

25   fact enterprise consisting of myself and others, which

58

1   enterprise was engaged in racketeering activity, I knowingly,

2   willfully, deliberately and with premeditation and with malice

3   aforethought murdered and aided and abetted the murder of

4   Anthony DiLapi in violation of Section 187 (a) and other

5   related sections of the California Penal Code and the New York

6   Penal Law.

7           THE COURT:  Mr. Zappola, relief is in sight but I ask

8   you once again, just as important now as the first time I

9   asked you these questions:  Do you agree with everything that

10  Mr. LaRossa just stated?  Do you adopt that as the truth?

11  Does this represent your testimony in respect to, so to speak,

12  your allocution and that you adopt this as your words?

13          DEFENDANT ZAPPOLA:  Yes.

14          THE COURT:  All right.  Count Two, murder of Victor

15  Filocomo.

16          MR. LA ROSSA:   No.

17          THE COURT:  Strike that.  Let's move on to count --

18          MR. WEINSTEIN:  I think you are looking at the

19  information for Mr. Conte.

20          Count One is the same in both informations.

21          THE COURT:  Count Two, murder of John "Otto" Heidel,

22  on or about October 13, 1987.

23          MR. LA ROSSA:  "On or about October 13, 1987, in the

24  Eastern and Southern Districts of New York and elsewhere, and

25  for the purpose of maintaining and increasing my position in

59

1   an association in fact enterprise, consisting of myself and

2   others, which enterprise was engaged in racketeering activity,

3   I murdered and aided and abetted the murder of John "Otto"

4   Heidel, in violation of the New York Penal Law.

5           THE COURT:  Do you agree and do you adopt that as

6   your statement, Mr. Zappola?

7           DEFENDANT ZAPPOLA:  Yes, I do.

8           THE COURT:  Count Three, conspiracy to murder Robert

9   Scarpaci in or about the early 1908s.

10          MR. LA ROSSA:  "In or about approximately the early

11  1980s, in the Eastern and Southern Districts of New York and

12  elsewhere, and for the purpose of maintaining and increasing

13  my position in an association in fact enterprise consisting of

14  myself and others, which enterprise was engaged in

15  racketeering activity, I conspired and agreed with others to

16  murder Robert Scarpaci, in violation of the New York Penal

17  Law."

18          THE COURT:  Do you agree that this is correctly

19  stated, Mr. Zappola?

20          DEFENDANT ZAPPOLA:  Yes.

21          THE COURT:  Count Four, conspiracy to murder Burt

22  Kaplan in or about 1993.

23          MR. LA ROSSA:  "In or about approximately 1993, in

24  the Eastern and Southern Districts of New York and elsewhere,

25  and for the purpose of maintaining and increasing my position

1  in an association in fact enterprise consisting of myself and

2  others, which enterprise was engaged in racketeering activity,

3  I conspired and agreed with others to murder Burt Kaplan, in

4  violation of the New York Penal Law."

5          THE COURT:  Mr. Zappola, do you agree with that?

6          MR. ZAPPOLA:  Yes, I do.

7          THE COURT:  Do you adopt that as your statement?

8          DEFENDANT ZAPPOLA:  Yes, I do.

9          THE COURT:  Count Five, conspiracy to murder Peter

10  Chiodo's relatives in or about and between July 1, 1991, and

11  March 1992.

12          MR. LA ROSSA:  "From in or about and between

13  approximately July 1991 and March 1992, in the Eastern and

14  Southern Districts of New York and elsewhere, and for the

15  purpose of maintaining and increasing my position in an

16  association in fact enterprise consisting of myself and

17  others, which enterprise was engaged in racketeering activity,

18  I conspired and agreed with others to murder relatives of

19  Peter Chiodo, specifically Thomas Signorino and Patricia

20  Cappazola, in violation of the New York Penal Law."

21          THE COURT:  Mr. Zappola, do you agree with that?

22          MR. ZAPPOLA:  Yes, I do.

23          THE COURT:  All right.

24          Last, Count Six, conspiracy to murder Nicholas Guido

25  and Bob Bering in or about and between October 1986 and

61

1    January 1993.

2        MR. LA ROSSA:    From in or about and between

3    approximately October '86 and January '93, in the Eastern and

4    Southern Districts of New York and elsewhere, and for the

5    purpose of maintaining and increasing my position in an

6    association in fact enterprise consisting of myself and

7    others, which enterprise was engaged in racketeering activity,

8    I conspired and agreed with others to murder Nicholas Guido

9    and Bob Bering, in violation of the New York Penal Law."

10        THE COURT:    Do you agree that that is an accurate

11    reading and that those represent your involvement in those

12    matters, Mr. Zappola?

13        DEFENDANT ZAPPOLA:    Yes, I do.

14        THE COURT:    All right.

15        Based upon all this information given to me, I find

16    in respect to the six counts in the information that the

17    defendant is acting voluntarily with respect to each; that he

18    fully understands his rights, the consequences of his pleas of

19    guilty, and that there are indeed factual bases for the pleas

20    of guilty with respect to Counts One through Six of the

21    information.    I will therefore accept the pleas of guilty to

22    Count One, Two, Three, Four, Five and Six of the information.

23        MR. LA ROSSA:    Not to be redundant.  Mr. Zappola

24    again reiterates that is his allocution and the admission of

25    guilt, and he does not agree with all other statements in both

D. Pereira, OCR

62

1  the information that was filed and the indictment.

2          THE COURT:  You made your record in that respect.

3          MR. LA ROSSA:    Thank you.

4          THE COURT:  Is there anything the Court may have

5  inadvertently omitted in the course of these rather elaborate

6  proceedings that the government feels obliged to call to my

7  attention?

8          MR. ORENSTEIN:  Judge, after consultation with

9  counsel, I believe it is our impression that your Honor

10 covered the waiver of indictment at the very beginning of

11 these proceedings.

12         THE COURT:  I did.

13         MR. ORENSTEIN:  Other than that, I believe the

14 allocution by Mr. Zappola has been sufficient to all of the

15 counts to which he has pleaded guilty.

16         THE COURT:  Anything further from your quarters,

17 Mr. LaRossa?

18         MR. LA ROSSA:    No, sir.

19         THE COURT:  Thank you, gentlemen.

20         That takes care of the allocutions and the pleas in

21 respect to the Defendant Zappola.

22         We shall set a date for sentencing.  What is your

23 preference in respect to that?

24         I've got to get a presentence report.

25         MR. ORENSTEIN:  May we suggest we set a date.  If it

63

1   proves inconvenient to the parties or the Court, we can confer

2   further.

3           MR. LA ROSSA:   If we're going to do it in September,

4   I am going to be out of the country until the --

5           THE CLERK:  First week in October, October 4th.

6           THE COURT:  I may not be here then.

7           MR. LA ROSSA:   Everybody is in custody.

8           THE COURT:  Put October 4, 10:00 a.m.

9           Mr. LaRossa, you are free to leave.

10          MR. LA ROSSA:   Thank you.

11          THE COURT:  Thank you for your cooperation.  I am

12  going to take a five-minute break for obvious reasons, and

13  we'll then address Mr. Watanabe's client.

14          (Recess).

15          THE COURT:  Mr. Watanabe, are you ready to proceed?

16          MR. WATANABE:   Yes, Judge.

17          THE COURT:  Are you also prepared to use the same

18  format that Mr. LaRossa did?

19          MR. WATANABE:  Yes, Judge, more or less.

20          Does Your Honor mind if I do it from the table?

21          THE COURT:  No.

22          We are up to the allocutions.

23          All right.

24          Now, at this time, let's use the same format in going

25  through the indictment in respect to Mr. Conte.

64

1          Let me once again first address Count One, the

2     racketeering count, and of course the various racketeering

3     acts set forth therein that pertain to Mr. Conte.

4          At this time, Mr. Watanabe, are you prepared to put

5     forth an allocution for your client's consideration and

6     adoption?

7          MR. WATANABE:    I am, your Honor.  However, before I

8     begin, I would like to reiterate Mr. LaRossa's remarks, that

9     the allocution that is about to occur constitutes Mr. Conte's

10    admissions to the crimes to which he would be pleading, and

11    that with respect to other allegations that may be contained

12    within the indictment, they are disagreed with and not adopted

13    in any way, fashion or form.

14          THE COURT:  Spoken like an auspicious lawyer but,

15    obviously, you are talking about what's going to be allocuted

16    to and whether that satisfies the requisite elements for each

17    of these counts.

18          With that understanding, you may proceed.

19          MR. WATANABE:    With respect to Count One, the RICO

20    count, "From in or about and between 1987 and in the Eastern

21    and Southern Districts of New York and elsewhere, I was

22    associated with an association in fact enterprise consisting

23    of myself and others whose activities affected interstate

24    commerce.  During that time I willfully conducted and

25    participated in the conduct of the affairs of that association

65

1   in fact enterprise through a pattern of racketeering

2   activity.  As part of the pattern of racketeering activity, I

3   committed the following racketeering acts, among others:

4           Racketeering Act One, Conspiracy to Murder and the

5   Murder of Julius Calder.

6           MR. ORENSTEIN:  If I can interrupt, that's

7   Racketeering Act Two.

8           MR. WATANABE:   Act Two.

9           "From in or about and between 1988 and June 2, 1989,

10  I conspired with persons known and unknown to murder and did

11  in fact murder Julius Calder in violation of New York Penal

12  Law, Sections 125.5 and 20."

13          With respect to Racketeering Act Three, conspiracy to

14  murder the New Jersey Faction:

15          "From in or about and between 1989 and 1991, I

16  conspired with others to murder Anthony Accetturo, Sr.,

17  Anthony Accetturo, Jr., Thomas Ricciardi, Joseph LaMorte and

18  others, whom the government has referred to collectively as

19  the New Jersey Faction, in violation of New York Penal Law.

20          THE COURT:  Can I just go back.  It is getting late

21  in the day.  Racketeering Act One in the indictment refers to

22  the conspiracy to murder and the murder of Michael Pappadio.

23          MR. WATANABE:   That's correct.  I was corrected.

24  The murder of Julius Calder is actually racketeering Act Two.

25  I clarified myself.

66

1          THE COURT:  So --

2          MR. WATANABE:    I misspoke.

3          THE COURT:  Michael Pappadio.  I am just trying to

4  find where Mr. Conte's name is set forth in Racketeering Act

5  One.

6          MR. ORENSTEIN:  Judge, Mr. Conte is not charged in

7  Racketeering Act One.

8          THE COURT:  That's what I am concerned about.

9          MR. WATANABE:    I misspoke when I said it was

10  Racketeering Act One.

11          THE COURT:  The first one you are talking to is

12  Racketeering Act Two.

13          MR. WATANABE:    Act Two.

14          Yes, sir.

15          MR. ORENSTEIN:  Judge, before we move on, past the

16  Calder murder, I think what's been said so far goes a long way

17  towards satisfying the elements.  It doesn't quite get there.

18          The concern I have is, when Mr. Zappola allocuted,

19  for instance, to the Pappadio murder, part of his allocution

20  included a specific act such as shooting or conducting a

21  surveillance.  I think that without some such act being

22  admitted to by the defendant, which has not yet been heard

23  with respect to the Calder murder, it is not a sufficient plea

24  under Rule 11.

25          THE COURT:  You know, in terms of the allocution in

1  respect to the enterprise and his association with the

2  enterprise, pattern of racketeering, they are somewhat

3  general, but I think they suffice.  When it comes to the

4  requisite minimum two acts, I think they have to be

5  specifically set forth.

6         Mr. Watanabe, why don't you consider that and reflect

7  upon that.

8         MR. WATANABE:   Yes, sir.

9         With respect to Racketeering Act Two, the conspiracy

10 to murder and the murder of Julius Calder, in addition to what

11 I have stated before on the record, in furtherance of the

12 conspiracy, Mr. Conte murdered Mr. Calder, shot Julius Calder

13 to death.

14        Does that suffice for the government?

15        MR. ORENSTEIN:  It does.  Thank you.  As long as Mr.

16 Conte adopts that statement.

17        THE COURT:  Was that act related to the affairs of

18 the enterprise or did the defendant commit these acts by

19 virtue of his position or involvement in the affairs of the

20 enterprise?  I want to determine that as well.

21        MR. WATANABE:   And that the death of Mr. Calder was

22 in actual furtherance of that association of that enterprise.

23        THE COURT:  Mr. Conte, do you hear all of this?  Do

24 you have any question as to the accuracy of what was just

25 stated by your counsel on the record?

68

1          Do you agree that that accurately does represent what

2     your involvement was in respect to Count One and,

3     specifically, in respect to the first act of racketeering?

4          DEFENDANT CONTE:  Yes.

5          THE COURT:  Which is really the second one that's set

6     forth in the indictment?

7          DEFENDANT CONTE:  Yes, Judge.

8          THE COURT:  All right.

9          Go ahead.

10         MR. WATANABE:  Where would the Court like me to

11    begin?

12         THE COURT:  You are going to continue with additional

13    acts of racketeering here.

14         MR. WATANABE:   I will address Racketeering Act

15    Three.

16         I will again reiterate for the record that from in or

17    about approximately 1988 and 1991, Mr. Conte conspired with

18    others to murder Anthony Accetturo, Sr., Anthony Accetturo,

19    Jr., Thomas Ricciardi, Joseph LaMorte and others -- and the

20    government has referred to them collectively as the New Jersey

21    Faction -- in violation of the New York Penal Law.

22         "And in furtherance of that conspiracy I met with

23    others to discuss the murder of those persons referenced as

24    the New Jersey Faction."

25         THE COURT:  And were these acts related to the

D.Pereira, OCR

69

1    affairs of the enterprise?

2            MR. WATANABE:  They were, your Honor.

3            THE COURT:  Do you agree, Mr. Conte, to everything

4    that was just set forth by your attorney?

5            DEFENDANT CONTE:  Yes, your Honor.

6            THE COURT:  Do you adopt that as if you were speaking

7    the words yourself?

8            DEFENDANT CONTE:  Yes, sir.

9            THE COURT:  No question about that, is there?

10           DEFENDANT CONTE:  No question.

11           THE COURT:  Continue.

12           MR. WATANABE:   Racketeering Act Four.

13           "From in or about and between 1990 and in the spring

14   of 1991, I conspired with and agreed with other persons to

15   murder Peter Chiodo, in violation of New York Penal Law.

16           "In furtherance of the conspiracy, I assisted others

17   in attempting to locate Peter Chiodo for the purpose of

18   killing him."

19           THE COURT:  Once again, I want you to tell me whether

20   all of this was related to the affairs of the enterprise.

21           MR. WATANABE:   It was, Judge.

22           THE COURT:  Go through the rest, and then I will ask

23   whether he adopts all of this.

24           MR. WATANABE:  Okay.

25           Racketeering Act Seven, Conspiracy to Murder James

70

1   Bishop.

2        "From in or about and between approximately April

3   1990 and May 17, 1990, I conspired and agreed with others to

4   murder James Bishop, in violation of New York Penal Law.

5        "In furtherance of the conspiracy I shot" -- Mr.

6   Conte shot Mr. James Bishop on or about May 17, 1990, and that

7   such crime was committed in violation of New York Penal Law

8   and in fact that was done in furtherance of the association in

9   fact enterprise.

10        THE COURT:  Do you agree with that and do you agree

11   with the prior statements in respect to the racketeering acts

12   that your counsel has set forth?

13        DEFENDANT CONTE:  Yes, your Honor.

14        THE COURT:  Do you have any question at all that you

15   want to speak to your attorney about in respect to that?

16        DEFENDANT CONTE:  No, your Honor.

17        THE COURT:  Do you have any more, Mr. Watanabe?

18        MR. WATANABE:  Yes, I do, Judge.

19        Racketeering Act Nine, conspiracy to murder and the

20   murder of Richard Taglianetti.

21        "From in or about 1983 and July 23, 1992, Mr. Conte

22   conspired with oth pË       D.Pereira, OCR

71

1   murder."

2          THE COURT:  Once again --

3          MR. WATANABE:  And that in or about July 1992,

4   Mr. Taglianetti was in fact murdered by being shot to death by

5   George Conte and this was all in furtherance of the

6   association in fact enterprise.

7          MR. ORENSTEIN:  Judge, may I have a moment to confer

8   with counsel?

9          MR. WATANABE:   Go ahead.

10         (Pause.)

11         MR. WATANABE:   Judge, I misspoke.

12         I would withdraw that portion that stated that Mr.

13  Conte shot and killed Mr. Taglianetti.  But for the purposes

14  of this allocution, with respect to the specific racketeering

15  act, he did in fact conspire with other persons by conducting

16  surveillance of Mr. Taglianetti and that on a subsequent date

17  in 1992, Mr. Taglianetti was in fact shot and killed.

18         THE COURT:  What other racketeering acts does he wish

19  to acknowledge and own up and confess to?

20         MR. WATANABE:   Racketeering Act Ten, conspiracy to

21  murder Richard Guiga.  That from in or about and between

22  approximately 1990 and 1993, Mr. Conte conspired and agreed

23  with others to murder Richard Guiga, in violation of New York

24  Penal Law.

25         And that in furtherance of the conspiracy, he met and

72

1   discussed with others the murder of Mr. Guiga, and again, this

2   act was done in furtherance of the association in fact

3   enterprise.

4           THE COURT:  Anything else?

5           MR. ORENSTEIN:  Your Honor, those are all the

6   racketeering acts with which Mr. Conte is charged.

7           THE COURT:  Mr. Conte, having heard your lawyer set

8   forth all of these acts and everything else that you said in

9   respect to Count One, do you agree with everything that he

10  said?  Do you adopt what he said as your words?

11          DEFENDANT CONTE:  Yes, your Honor.

12          THE COURT:  Is there anything at all that he said

13  that you are in disagreement about whatsoever?

14          DEFENDANT CONTE:  No, your Honor.

15          THE COURT:  Let's move on to Count Two of the

16  indictment, racketeering conspiracy.

17          Mr. Watanabe, what does your client say in respect to

18  that?

19          MR. WATANABE:  From in or about and between the

20  early 1970s and the date of the superseding indictment in the

21  Eastern and Southern Districts of New York and elsewhere, Mr.

22  Conte, being employed by and associated with an association in

23  fact enterprise consisting of himself and others, which

24  enterprise engaged in the activities of which affected

25  interstate commerce, did conspire and agree to conduct and

73

1  participate, both directly and indirectly, in the conduct of

2  the affairs of that association in fact enterprise through a

3  pattern of racketeering activity by agreeing to permit and

4  actually committing, among other things, each of the

5  racketeering acts to which he had previously allocuted in

6  Count One.

7          THE COURT:  Mr. Conte, do you agree with the

8  statements made by your attorney in your behalf in respect to

9  Count Two?

10         Do you adopt them as your words?

11         Do you have any question whatsoever about the

12  accuracy of what was just said?

13         Do you adopt those as your own words?

14         DEFENDANT CONTE:  Yes, I do.

15         THE COURT: You have no question about the accuracy of

16  what is said?

17         DEFENDANT CONTE:  No question.

18         THE COURT:  Let's move on to Count Number Six,

19  conspiracy to murder the New Jersey Faction.

20         What does the defendant have to say in respect to

21  that count?

22         MR. WATANABE:  With regard to Count Six, from in or

23  about and between approximately 1988 and 1991, in the Eastern

24  and Southern Districts of New York and elsewhere, and for the

25  purpose of maintaining and increasing Mr. Conte's position in

1    an association in fact enterprise consisting of himself and

2    others, which enterprise engaged in racketeering activity, he

3    conspired to murder Anthony Accetturo, Anthony Accetturo, Jr.,

4    Thomas Ricciardi, Joseph LaMorte and others, whom the

5    government has collectively referred to as the New Jersey

6    Faction, in violation of New York Penal Law, and in

7    furtherance of such a conspiracy, did in fact meet and discuss

8    the murder of the above-referenced individuals.

9           THE COURT:  Do you agree with all of that, Mr.

10   Conte?

11          Do you adopt those words as your words?

12          DEFENDANT CONTE:  Yes, I do, your Honor.

13          THE COURT:  You do.

14          Count Seven, conspiracy to murder Peter Chiodo.

15          MR. WATANABE:  Count Seven, conspiracy to murder

16   Peter Chiodo.

17          From in or about or about and between early 1991 and

18   May 8, 1991, in the Eastern and Southern Districts of New York

19   and elsewhere, for the purpose of maintaining and increasing

20   Mr. Conte's position in an association in fact enterprise

21   consisting of himself and others, which enterprise engaged in

22   racketeering activity, he conspired and agreed with others to

23   murder Peter Chiodo, in violation of New York Penal Law.

24          THE COURT:  Do you agree with all of that, Mr.

25   Conte?

D.Pereira, OCR

75

1          DEFENDANT CONTE:  Yes, I do.

2          THE COURT:  Count Eight, attempted murder of Peter

3    Chiodo.

4          MR. WATANABE:  On or about May 8, 1991, in the

5    Eastern District of New York and Southern District of New York

6    and elsewhere, the defendant, Mr. Conte, attempted to murder

7    Peter Chiodo, in violation of New York Penal Law, by shooting

8    Peter Chiodo --

9          THE COURT:  That's a pretty good attempt.

10         MR. WATANABE:   -- for the purpose of maintaining and

11   increasing his position with the association in fact

12   enterprise.

13         THE COURT:  All right.

14         Do you agree, Mr. Conte, that you did shoot

15   Mr. Chiodo?

16         DEFENDANT CONTE:  Yes, I do.

17         THE COURT:  And everything else that was just stated

18   by your attorney, Mr. Watanabe?

19         DEFENDANT CONTE:  Yes, your Honor.

20         THE COURT:  Count Fourteen, Conspiracy to Murder of

21   Richard Taglianetti.

22         MR. WATANABE:   From in or about July 23, 1992 in the

23   Eastern and Southern Districts of New York and elsewhere, and

24   for the purpose of maintaining and increasing his position

25   with an association in fact enterprise consisting of myself

1    and others, which enterprise engaged in racketeering activity,

2    Mr. Conte murdered and aided and abetted the murder of Richard

3    Taglianetti, in violation of New York Penal Law.

4              THE COURT:  This was, once again, done for the

5    purposes of maintaining and increasing his position in the

6    Luchese Crime Family, or the enterprise that you had

7    identified?

8              MR. WATANABE:   Your Honor, it is with respect to the

9    furtherance of the enterprise with respect to the association

10   in fact enterprise.

11             THE COURT:  Okay.  Do you agree with all of that, Mr.

12   Conte?

13             DEFENDANT CONTE:  Yes, I do, your Honor.

14             THE COURT:  Count Fifteen.

15             MR. WATANABE:  Sixteen.

16             THE COURT:  I'm sorry, we are up to Fifteen.

17             MR. WATANABE:   We're up to Fifteen, excuse me.

18             THE COURT:  Now we're talking about the murder

19   Richard Taglianetti.

20             MR. WATANABE:   On or about July 23, 1992, in the

21   Eastern and Southern Districts of New York and elsewhere, and

22   for the purpose of maintaining and increasing Mr. Conte's

23   position in an association in fact enterprise consisting of

24   himself and others, which enterprise engaged in racketeering

25   activity, Mr. Conte murdered and aided and abetted in the

1  murder of Richard Taglianetti in violation of New York Penal

2  Law.

3           THE COURT:  Do you agree with all of that, Mr.

4  Conte?  Did you indeed do that?

5           DEFENDANT CONTE:  Yes, I did.

6           THE COURT:  Count Sixteen, Conspiracy to Murder

7  Richard Guiga.

8           MR. WATANABE:  From in or about approximately 1990

9  and 1993, in the Eastern and Southern Districts of New York

10  and elsewhere, and for the purpose of maintaining and

11  increasing his position in an association in fact enterprise

12  consisting of himself and others, which enterprise engaged in

13  racketeering activity, he conspired and agreed with others to

14  murder Richard Guiga, in violation of New York Penal Law.

15           THE COURT:  Did you indeed do that, and do you agree

16  with everything that your attorney just stated?

17           DEFENDANT CONTE:  Yes, I do.

18           THE COURT:  Now, Nineteen, Accessory After the Fact.

19           MR. WATANABE:  From in or about and approximately May

20  30, 1990, and January 19, 1993, in the Eastern and Southern

21  Districts of New York and elsewhere, Mr. Conte knowingly and

22  intentionally received, relieved, comforted and assisted

23  Anthony Casso in order to hinder and prevent his apprehension,

24  trial and punishment, knowing that Anthony Casso had committed

25  various offenses against the United States, including, but not

78

1   limited to, conspiracy to commit murder, attempted murder, and

2   murder, all in aid of racketeering, in violation of 18,

3   U.S.C., 1959.

4        THE COURT:  Do you adopt and do you agree with

5   everything that was just spoken by your attorney, Mr. Conte?

6        DEFENDANT CONTE:  Yes, I do.

7        THE COURT:  Count Twenty, Harboring.

8        MR. WATANABE:   From in or about May 30, 1990 and

9   January 19, 1993, in the Eastern and Southern Districts of New

10  York and elsewhere, Mr. Conte knowingly and intentionally

11  harbored and concealed Anthony Casso, for whose arrest a

12  warrant had been issued by the federal government, in order to

13  prevent his discovery and arrest, after he had notice and

14  knowledge of the fact that such a warrant had been issued for

15  his apprehension.

16       THE COURT:  Do you have any question in your mind

17  that that is an accurate statement of the aspects of Count

18  Twenty as your attorney has just set them forth, Mr. Conte?

19       DEFENDANT CONTE:  Yes, your Honor.

20       THE COURT:  Do you adopt that as your statement?

21       DEFENDANT CONTE:  Yes, I do.

22       THE COURT:  Last part of the indictment, Count

23  Twenty-one, Conspiracy to Defraud the United States.

24       MR. WATANABE:  From in or about and between 1978 and

25  the date of this superseding indictment, in the Eastern and

79

1    Southern Districts of New York and elsewhere, Mr. Conte

2    conspired and agreed with others to defraud the United States

3    by impeding, impairing, obstructing and defeating the lawful

4    functions of the Treasury Department in the ascertainment,

5    computation, and collection of income taxes due and owing from

6    himself and others, and in furtherance of that conspiracy, Mr.

7    Conte failed to file tax returns in the years 1989, 1990, and

8    1991.

9         THE COURT:  Do you agree that that actually did

10   happen?  Do you agree with everything that was just spread on

11   the record by your attorney?

12        DEFENDANT CONTE:  Yes, I understand.

13        THE COURT:  And you adopt that as your acts?

14        DEFENDANT CONTE:  Yes, your Honor.

15        THE COURT:  Let's move to the information.

16        Count One, murder of Anthony DiLapi on or about

17   February 4, 1990.

18        MR. WATANABE:  Count One of the information, Murder

19   of Anthony DiLapi.

20        On or about February 4, 1990, in the Eastern District

21   of New York and elsewhere, including the Central District of

22   California and elsewhere, and for the purpose of maintaining

23   and increasing his position in an association in fact

24   enterprise consisting of himself and others, which enterprise

25   was engaged in racketeering activity, Mr. Conte did knowingly,

1  willfully, deliberately and with premeditation and malice

2  aforethought murdered and aided and abetted the murder of

3  Anthony DiLapi, in violation of Section 187 and other related

4  sections of the California Penal Code and New York Penal Law.

5        THE COURT:  Do you agree that you did that, Mr.

6  Conte?

7        DEFENDANT CONTE:  Yes, I do, your Honor.

8        THE COURT:  Count Two, murder of Victor Filocomo on

9  or about October 18, 1988.

10        MR. WATANABE:  On or about October 18, 1988, in the

11  Eastern and Southern Districts of New York and elsewhere, and

12  for the purpose of maintaining and increasing his position in

13  an association in fact enterprise consisting of himself and

14  others, which enterprise was engaged in racketeering activity,

15  Mr. Conte murdered and aided and abetted the murder of Victor

16  Filocomo, in violation of New York Penal Law.

17        THE COURT:  Do you agree that you did that, Mr.

18  Conte?

19        DEFENDANT CONTE:  Yes, I do, your Honor.

20        THE COURT:  Count Three, murder of Nicholas Izzo on

21  or about October 27th, 1983.

22        MR. WATANABE:  Count three, murder of Nicholas Izzo.

23        On or about October 27, 1983, in the Eastern and

24  Southern District of New York and elsewhere, and for the

25  purpose of maintaining and increasing his position in an

D.Pereira, OCR

81

1  association in fact enterprise, consisting of himself and

2  others, which enterprise was engaged in racketeering activity,

3  Mr. Conte did murder and aided and abetted the murder of

4  Nicholas Izzo, in violation of New York Penal Law.

5        THE COURT:  Do you agree that you did that?

6        DEFENDANT CONTE:  Yes, I did, your Honor.

7        THE COURT:  Count Four, Conspiracy to Murder Burt

8  Kaplan in or about 1993.

9        MR. WATANABE:   In or about and approximately 1993,

10  in the Eastern and Southern Districts of New York and

11  elsewhere, and for the purpose of maintaining and increasing

12  his position in an association in fact enterprise consisting

13  of himself and others, which enterprise was engaged in

14  racketeering activity, Mr. Conte conspired and agreed with

15  others to murder Burt Kaplan, in violation of the New York

16  Penal Law.

17        THE COURT:  Do you adopt those words as your words?

18  Do you agree that that is correct?

19        DEFENDANT CONTE:  Yes, I do.

20        THE COURT:  Count Five, Conspiracy to Murder Joseph

21  Marra in or about 1993.

22        MR. WATANABE:   In or about 1993, in the Eastern and

23  Southern Districts of New York and elsewhere, and for the

24  purpose of maintaining and increasing his position in an

25  association in fact enterprise consisting of himself and

82

1   others, which enterprise was engaged in racketeering activity,

2   Mr. Conte conspired and agreed with others to murder Joseph

3   Marra, in violation of New York Penal Law.

4           THE COURT:  Do you agree that you did that?  Do you

5   adopt that as your words?

6           DEFENDANT CONTE:  Yes, I did.

7           THE COURT:  Count Six, Conspiracy to Murder John Dunn

8   in or about the summer of 1988.

9           MR. WATANABE:   In or about the summer of 1988, in

10  the Eastern and Southern Districts of New York and elsewhere,

11  and for the purpose of maintaining and increasing his position

12  in an association in fact enterprise consisting of himself and

13  others, which enterprise was engaged in racketeering activity,

14  Mr. Conte conspired and agreed with others to murder John

15  Dunn, in violation of New York Penal Law.

16          THE COURT:  All right.

17          Do you adopt that as your words?

18          DEFENDANT CONTE: Yes, I do.

19          THE COURT:  Do you agree with everything that was

20  just said?

21          DEFENDANT CONTE: Yes, I do.

22          THE COURT: No question about that?

23          DEFENDANT CONTE: No question.

24          THE COURT:  Based on the information given to me, I

25  find the defendant is acting voluntarily in respect to each of

D.Pereira, OCR

1    these pleas, fully understands his rights and the consequences

2    of each of these pleas of guilty, and that there is indeed a

3    factual basis for each of these pleas.  I therefore accept the

4    pleas of guilty to Counts One and Two of the indictment, to

5    Counts Fifteen of the indictment, and each of Counts One

6    through Three of the information, also as to Count Six, Seven,

7    Eight, Fourteen and Sixteen of the indictment and Counts Four

8    through Six of the information.  Further, in respect to Counts

9    Nineteen and Twenty and Twenty-one of the indictment as well.

10           I will also set sentence date for October 4th, if

11    memory serves me correctly, at 10:00 a.m., in respect to Mr.

12    Conte as I have done so with respect to Mr. Zappola.

13           At this time, is there any other information or

14    matters that the government is concerned about that the Court

15    should be made aware before I conclude these proceedings?

16           Mr. Orenstein, anything further?

17           MR. ORENSTEIN:  No.

18           Thank you, your Honor.

19           THE COURT:  Mr. Watanabe, anything further in respect

20    to your client that you wish to put on the record or bring to

21    my attention at this time?

22           MR. WATANABE:   No, Judge.

23           THE COURT:  All right.

24           MR. ORENSTEIN:  Thank you, Judge.  Thank you very

25    much for staying late and your cooperating personnel.

84

1

2                     <u>I N D E X</u>

3                   <u>E X H I B I T S</u>

4
     <u>Court's</u>              **Description**              <u>In Evidence</u>
5    1               Zappola Plea Agreement            4
     2               Conte Plea Agreement              4
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

D.Pereira, OCR